IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT SAUNDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 20-184 (MN) |
| | ) |
| CONNECTIONS COMMUNITY | ) Superior Court of the State of Delaware in |
| SUPPORT PROGRAMS, et al., | ) and for New Castle County |
| | ) C.A. No. N20C-01-023 JRJ |
| Defendants. | ) |

## MEMORANDUM OPINION

Robert Saunders, James T. Vaughn Correctional Center, Smyrna, DE – *Pro Se* Plaintiff

Kenneth L. Wan, Deputy Attorney General, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, DE – Attorneys for Defendants Bureau Chief James Elder, Deputy Warden Natasha Hollingsworth, Ernest Kulhanek, and Andrew Perucki

October 23, 2020
Wilmington, DE

**NOREIKA, U.S. DISTRICT JUDGE:**

## I. INTRODUCTION

Plaintiff Robert Saunders ("Plaintiff" or "Saunders"), an inmate at the James T. Vaughn Correctional Center ("JTVCC"), filed this civil rights action on January 10, 2010 in the Superior Court of the State of Delaware in and for New Castle County, C.A. No. N20C-01-023 JRJ. (D.I. 1-1 at 2-6). He proceeds *pro se*. Defendants Bureau Chief James Elder ("Elder"), Deputy Warden Natasha Hollingsworth ("Hollingsworth"), Maintenance Supervisor Ernest Kulhanek ("Kulhanek"),[1] and Legal Services Administrator Andrew Peruchi ("Peruchi") ("DOC Defendants") removed the case to this Court on February 6, 2020. (D.I. 1). Connections Community Support Programs ("Connections") is also a named defendant but it has not been served. (*See* D.I. 1-2 at 2). DOC Defendants move for dismissal, and Plaintiff moves for injunctive relief and requests counsel.[2] (D.I. 3, 8, 12, 13).

## II. BACKGROUND

Plaintiff raises claims under 42 U.S.C. § 1983. Count I alleges that all Defendants violated Plaintiff's right to be free from cruel and unusual punishment when they "directly or indirectly [] cooperated and participated" in violating the constitutional rights of Plaintiff and other inmates housed in the infirmary. Count II alleges conspiracy "as a direct and proximate result" of Defendants' misconduct that caused physical and emotional pain and suffering to Plaintiff and

---

[1] Defendants advise this defendant is improperly named as "Kulhnick" in the Complaint. (D.I. 1 at n.1).

[2] Section 1915(e)(1) confers the district court with the power to request that counsel represent a litigant who is proceeding *in forma pauperis*. There is no indication on the State Court docket that Plaintiff sought leave to proceed *in forma pauperis*. Nor has he sought leave to proceed *in forma pauperis* in this Court. Plaintiff does not have *pauper* status and, therefore, does not qualify for counsel under § 1915. This Court will deny his request for counsel. (D.I. 12).

other inmates housed in the JTVCC infirmary. Count III alleges all Defendants, in their supervisory positions, failed to properly train, supervise, investigate, and discipline their subordinates to prevent misconduct. (*Id*. at 5).

Plaintiff was housed in the JTVCC infirmary between December 6, 2019 and December 11, 2019. (D.I. 1-1 at 2-3). He alleges that on December 6, 2019, he was called to the infirmary to receive intravenous treatment due to blood test results. (*Id*. at 2-3). Plaintiff alleges that the infirmary was cold due to the location of a vent and broken window and because of that he had to sleep fully clothed. (*Id*. at 2-3). The Complaint alleges that a mentally ill inmate who was brought into the infirmary was sprayed with pepper spray. (*Id*. at 3). The Complaint alleges that on the same day Plaintiff was told that he did not have a disease, he could walk on his own, and that hospital patients were not permitted to go to the law library. (*Id*.). Plaintiff alleges that in the evening an unidentified nurse unsuccessfully attempted to place an intravenous needle into his arm. (*Id*.). The nurse instructed Plaintiff to "drink lots of water as an alternative." (*Id*.).

Plaintiff alleges that on December 10, 2019, Dr. Emilia Adah ("Dr. Adah") asked Plaintiff if he would like to reattempt the IV placement. (*Id*.). Plaintiff told Dr. Adah that he could just drink water, and he wanted to return to regular housing because was cold, his hands hurt, and living conditions were deplorable. (*Id*.). Plaintiff was advised that he would have to refuse treatment if he wished to leave the infirmary. (*Id*.). The next day Plaintiff saw Dr. Victor Herbsbuak ("Hersbuak") and told him how cold it was and that he had been told that he could drink water if he did not want IV treatment. (*Id*.). Plaintiff signed a medical treatment refusal form and was discharged. (*Id*.).

Plaintiff alleges that while he was housed in Ward 3, he was denied exercise, the rooms were not cleaned on the weekend, and hot meals were only served depending upon the inmate

2

working.  (*Id.* at 3).  Plaintiff submitted a number of grievances complaining about his stay in the infirmary – all returned as unprocessed.[3]  (*Id*. at 3, 14-23).  Plaintiff alleges that all Defendants "knowingly breached their duties in the operation of the infirmary at JTVCC." (*Id*. at 4).

For relief Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.  (*Id*. at 5).  He also requests counsel and asks the Court to certify the matter as a class action.  (*Id.* at 6).

DOC Defendants move for dismissal on the grounds that:  (1) the Complaint fails to plead facts to support a claim; (2) supervisory liability cannot be imposed upon them under § 1983; (3) Plaintiff failed to exhaust his administrative remedies; (4) they are entitled to qualified immunity; (5) and they were not properly served as required under 10 DEL. C. § 3103.  (D.I. 3, 4). The motion is unopposed even though Plaintiff sought an extension of time to respond to the motion and was given until April 26, 2020 to file a response.  (D.I. 5).

In mid-March Plaintiff filed a motion for injunctive relief and motion to stay the litigation and at the end of March DOC Defendants also filed a motion to stay the litigation.  (D.I. 7, 8, 9). The case was stayed.  (D.I. 10).  During the stay, Plaintiff filed a request for counsel and another motion for injunctive relief.  (D.I. 11, 12).  This Court lifted the stay on June 19, 2020.

As of August 27, 2020, Plaintiff had yet to file a response to the motion to dismiss and, as a result, this Court entered an Order for Plaintiff to show cause why the case should not be dismissed for failure to prosecute.  (D.I. 18).  Plaintiff was ordered to respond to the Show Cause Order on or before September 17, 2020.  Plaintiff did not respond to the Order.  Instead, on

---

[3]     Each returned grievance included a reason for its return, as follows:  "At this time you have been moved back to T2 as you requested."  "At this time you have been moved back to T2 but maintenance is working on the heat problem."  "On 12/9/19 you were in the infirmary housing you would NOT have been called to the law library."  "MEDICAL has nothing to do with law library appointments"  (D.I. 1-1 at 15, 17, 19, 21).

3

September 11, 2020, he filed a declaration regarding the status of his health, followed by a letter to this Court that provided another status of his medical conditions. (D.I. 19, 20).

### III. LEGAL STANDARD

Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210-11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*,

113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). In addition, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## IV.   DISCUSSION

DOC Defendants move for dismissal for a number of reasons. As will be discussed, the Complaint will be dismissed for two of those reasons.

### A.   Personal Involvement/Respondeat Superior

DOC Defendants move for dismissal on the ground that the Complaint fails to state claims upon which relief may be granted because it does not allege the requisite personal involvement of each defendant as required for claims raised under 42 U.S.C. § 1983. Plaintiff did not respond to this ground for dismissal.

Liability in a 42 U.S.C. § 1983 action is personal in nature, and to be liable, a defendant must have been personally involved in the wrongful conduct. In other words, DOC Defendants are "liable only for their own unconstitutional conduct." *Barkes v. First Corr. Med., Inc.,* 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015). This means that respondeat superior cannot form the basis of liability. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *see also Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008) (instructing that a constitutional deprivation cannot be premised merely on the fact that the defendant was a prison supervisor when the incidents set forth in the complaint occurred). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

5

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "'[T]here are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations.'" *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010)).

The Complaint contains no factual allegations directed to any Defendant. When Defendants are referred to in the Complaint they are referred to as a group. Moreover, allegations such as Defendants "breached their duties," "cooperated," "conspired," or "failed to respond reasonably," are conclusory without supporting facts. The Complaint does not show any Defendant's personal involvement and it is clear that all DOC Defendants are named based upon their supervisory positions. As pleaded, the Complaint fails to state a constitutional claim against any individual DOC Defendant.

The Complaint also alleges a failure to train claim. Because Plaintiff fails to state an underlying constitutional claim against the DOC Defendants, however, he cannot state a claim against them for failure to train their subordinates. *See Joh v. Suhey*, 709 F. App'x 729, 732 (3d Cir. 2017) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.26 (3d Cir. 1996) (if no underlying constitutional violation, failure to train claim will not stand).

The Complaint fails to state claims upon which relief may be granted. Accordingly, DOC Defendants' motion to dismiss will be granted. As discussed below, because his case will be

dismissed without prejudice for failure to perfect service, dismissal pursuant to Rule 12(b)(6) will also be without prejudice.

### B. Service

DOC Defendants seek dismissal on the ground that Plaintiff failed to perfect service because he did not serve the State of Delaware's Attorney General, the State Solicitor, or the Chief Deputy Attorney General as required under 10 DEL. C. § 3103. Plaintiff did not respond to this ground for dismissal.

A defendant may file a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(5) when a plaintiff fails to properly serve it with the summons and complaint. A plaintiff "is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." FED. R. CIV. P. 4(c)(1). Rule 4(m) imposes a 90-day time limit for perfection of service following the filing of a complaint. If service is not completed within that time, the action is subject to dismissal without prejudice. *See id.*; *see also MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1098 (3d Cir. 1995).

"Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992). This Court must grant an extension if good cause is present. *See Daniels v. Correctional Med. Services, Inc.*, 380 F. Supp. 2d 379, 384 (D. Del. 2005) (citing Fed. R. Civ. P. 4(m)). Even if the court finds ineffective service of process without good cause, however, it may allow Plaintiff another opportunity to attempt service. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). A determination of good cause relies on three factors: (1) whether the plaintiff has reasonably attempted to effect service; (2) whether the defendant is prejudiced by the absence of

timely service; and (3) whether the plaintiff moved for an extension of time for effective service. *See United States v. Nuttall*, 122 F.R.D. 163, 166–67 (D. Del. 1988).

DOC Defendants were served while this case was pending in State Court. Delaware courts require service under both DEL. SUPER. CT. R. 4(f)(1)(IV) which is the State equivalent to FED. R. CIV. P. 4(j) and 10 DEL. C. § 3103, which requires personal service. *See Miller v. State Dep't of Public Safety*, 2009 WL 1900394, at *4 (Del. Super. Ct. June 16, 2009). There is, however, a difference in the time frame for service under Delaware Rules and Federal Rules. Under Delaware Rules, service must be effected within 120 days after filing the complaint. *See* DEL. SUPER. CT. R. 4(j). Its federal counterpart, FED. R. CIV. P. 4(m) requires that service be effected within 90 days after the complaint is filed.

As noted, 10 DEL. C. § 3103(c) requires not only the service of DOC Defendants, but also the personal service of the Attorney General, State Solicitor, or Chief Deputy Attorney General when an officer of state government is sued, as follows:

> No service of summons upon the State, or upon any administrative office, agency, department, board or commission of the state government, or upon any officer of the state government concerning any matter arising in connection with the exercise of his or her official powers or duties, shall be complete until such service is made upon the person of the Attorney General or upon the person of the State Solicitor or upon the person of the Chief Deputy Attorney General.

The Delaware State Court docket does not reflect service upon the Attorney General, State Solicitor, or Chief Deputy Attorney General. In addition, the Court takes judicial notice that Plaintiff's praecipe asked that summon issue for the DOC Defendants as well as Connections, but not for the Attorney General, State Solicitor, or Chief Deputy Attorney General. The Delaware State Court docket indicates that Connections was never served because it was no longer at the address provided by Plaintiff. (D.I. 1-2 at 2).

8

The record reflects that service was not achieved as required. Nor has Plaintiff established good cause for his failure to effect service. He filed no opposition to the motion to dismiss that raised the service issue even though he sought, and was given, an extension of time to do so. Nor did he ever seek more time to serve DOC Defendants even when apprised of the service deficiency through the motion to dismiss. As noted above, absent good cause, the Court may allow Plaintiff another opportunity to attempt service. *See Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). Under the circumstances, however, this Court is not persuaded that it is appropriate to allow Plaintiff another opportunity to attempt service. As pleaded, the Complaint fails to state claims upon which relief may be granted. At this juncture, allowing Plaintiff to serve a complaint that fails to state a clam is pointless.

Accordingly, the motion to dismiss will be granted on this ground. Dismissal is without prejudice.

## V. **INJUNCTIVE RELIEF**

It is not clear what relief Plaintiff seeks in his first motion for injunctive relief. (D.I. 8).

Plaintiff's second motion for injunctive relief differs from the allegations in the Complaint. It seeks "a properly trained inmate assistant to assist with daily basic life activities and proper aids to assist with overcoming disabilities." (D.I. 13 at 2). A party pursuing injunctive relief is confined to arguing the merits of his or her complaint. *See*, *e.g*., *Colvin v. Caruso*, 605 F.3d 282, 300 (6th Cir. 2010) (explaining plaintiff "had no grounds to seek an injunction pertaining to allegedly impermissible conduct not mentioned in his original complaint"); *Martin v. Keitel*, 205 F. App'x 925, 928-29 (3d Cir. 2006) (injunctive relief motion was "legally deficient" because it targeted conduct that bore no relation to plaintiff's underlying claim); *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005) ("to obtain a permanent injunction, a party must

9

show . . . that he has prevailed in establishing the violation of the right asserted in his complaint"). This Court has applied this proposition of law to deny conduct of the sort attempted here. *See*, *e.g.*, *Brittingham v. Nunn*, Civ.A. No. 20-014 (MN), 2020 WL 4260597 (D. Del. July 24, 2020); *Fatir v. Connections Community Support Programs, Inc.*, Civ.A. No. 18-1549-CFC, 2020 WL 360895 (D. Del. Jan. 22, 2020); *Biggins v. Phelps*, Civ.A. No. 18-1574 (MN), 2019 WL 2025172 (D. Del. May 8, 2019).

The Complaint contains allegations related to Plaintiff's stay at the JTVCC infirmary, while the motion seeks inmate assistance to help Plaintiff with his activities of daily living. The motions' grounds for injunctive relief have no nexus to the underlying conduct that give rise to the claims asserted in the Complaint. Accordingly, Plaintiff's motions for injunctive relief will be denied. (D.I. 8, 13).

## VI. CONCLUSION

For the above reasons, the Court will: (1) grant DOC Defendants' motion to dismiss (D.I. 3); (2) dismiss the Complaint without prejudice; (3) deny Plaintiff's motions for injunctive relief (D.I. 8, 13) and; (4) deny Plaintiff's request for counsel (D.I. 12). An appropriate order will be entered.